### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| Ereina "Honey Rockwell" Valencia, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 1:14-cv-00528 |
| | ) | |
| Universal City Studios LLC and Marc Platt Productions, | ) ) ) | |
| Defendants. | ) ) ) | |

### MEMORANDUM OF LAW SUPPORTING DEFENDANTS' <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

Universal City Studios LLC and Marc Platt Productions, Inc. submit this brief supporting their Motion to Dismiss the Amended Complaint.

### INTRODUCTION

The Amended Complaint (Doc. 5) asserts claims that are years too late and which would be barred by the First Amendment and basic privacy and trademark law even if they were timely.  The Complaint should be dismissed.

Specifically, Plaintiff Ereina "Honey Rockwell" Valencia seeks to hold Defendants liable under misappropriation, unfair competition, and similar theories because the films *Honey* and *Honey 2* (the "*Honey* Films") allegedly

used her persona and portrayed aspects of her life story.  *Honey* was released in 2003.  *Honey 2* was released in 2011.

The Complaint does not state a claim for several reasons.  First, the applicable statutes of limitation and equitable doctrine of laches bar Ms. Valencia's claims.  Second, the Complaint in toto is barred by the First Amendment because the *Honey* Films are works of artistic expression. Finally, Ms. Valencia does not state a claim upon which relief can be granted, as she does not have a protectable interest in her life story or any valid trademark interest in the word or mark "Honey" and as Defendants fairly used the alleged mark "Honey" even if she did.

**FACTS**

I.    **The Complaint's Factual Allegations.**

A.    **Plaintiff Eriena Valencia.**

Ms. Valencia is a hip hop dancer and instructor originally from the Bronx, New York.  Ms. Valencia adopted "Honey Rockwell" as a stage name in 1994 and began teaching hip hop dance in community dance centers in Hunts Point in the Bronx.  As of 2003, Ms. Valencia alleges that under her stage name, she had: 1) created, produced, and released "B-Girls," a dance video; 2) appeared in dance magazines, newspapers, and music videos; and 3)

performed in various dance productions.  She continues to perform as Honey

Rockwell.  (Compl. ¶¶ 10-12, 13-14.)

### B.    *Honey.*

The Complaint admits that *Honey* was released in 2003 and that it

"chronicles the life of 'Honey Daniels,' an up and coming hip hop dance

instructor" who teaches hip hop dance in Hunts Point, New York.  The

Complaint alleges that Honey Daniels struggles with family issues and

adapting to the "success of appearing in a hip hop music video," yet, despite

these struggles, is able to achieve her dream of opening her own dance studio.

(Compl. ¶¶ 5-8.)

### C.    *Honey 2.*

Ms. Valencia claims *Honey 2* was released in 2010 and concerns "a

woman inspired by Honey Daniels [who] rises to fame as a hip hop dancer."

(Compl. ¶ 9.)

### D.    Alleged Similarities Between Ms. Valencia And The Character Honey Daniels Of The *Honey* Films.

The Complaint alleges that, like Ms. Valencia, the character Honey

Daniels:  1) is a Hispanic woman; 2) is from the Bronx; 3) teaches hip hop to

children; 4) has affiliations to "the same dance studios;" and 5) appeared in

hip hop music videos.  (Compl. ¶¶ 5-13.)  Ms. Valencia does not allege that

6347583.1

the *Honey* Films used her real name or pictures of her in or to promote the Films.

Ms. Valencia alleges that she was contacted to appear as "the real honey" at a movie release party and that various persons indicated their belief that she was "the woman depicted in" *Honey*.  She also alleges that *Honey*'s producers knew of Honey Daniels' "strong similarity" to Ms. Valencia during filming but did not contact Ms. Valencia.  Ms. Valencia asserts that Defendants used her "name, likeness, persona, or life story" without her consent.  (Id. at ¶¶ 14-15, 22-23.)

### E.   Allegations Regarding Ms. Valencia's "HONEY" Mark.

In several paragraphs, Ms. Valencia suggests that she owns a "HONEY mark."  (Compl. ¶¶ 39, 42, 46, 53, and 57.)  She does not claim to have registered "Honey" or "Honey Rockwell" as a federal or state trademark.[1]

Despite claiming that she was "the first person and/or entity to use the HONEY mark in the State of Georgia and in the United States in …[the] dance field," id. at ¶ 53, Ms. Valencia does not identify any specific goods or services to which the alleged HONEY mark applies, whether it is a word or

---

[1]  The USPTO database confirms that Ms. Valencia has no federal registration for HONEY or HONEY ROCKWELL.  There are currently 12 live marks for "HONEY," including a 2005 registration (No. 3160173) for use with "dance club services" and one for HONEY magazine.  There are currently 14 marks registered in Georgia with the word Honey as part of the mark.  (Schroeder Decl., filed contemporaneously).

6347583.1

design mark, or in what specific context this mark has been used to designate goods or services that originate with Ms. Valencia.

## II.   The *Honey* Films.

DVDs of the *Honey* Films have been filed with the Court and may be considered as they are referenced in the Complaint.  Fed. R. Civ. P. 10(c). *Honey* stars Jessica Alba as the protagonist, Honey Daniels, Mehki Phifer as her barber boyfriend, Chaz, and Joy Bryant as her best friend, Gina.  In the film, Honey Daniels balances a romantic relationship with Chaz while trying to establish a dance studio and herself as a choreographer.  After several challenges, Honey successfully stages a benefit for the dance studio and becomes a music video choreographer.

*Honey 2* did not star Ms. Alba or have Honey Daniels as its protagonist. Instead, *Honey 2* follows a different character, Maria Ramirez, played by a different actor, Katerina Graham.  In this film, Maria Ramirez is a dancer who returns to the recreation center where she learned to dance under Honey Daniels and trains a young dance group to compete on the television show "Dance Battlezone."  In the course of the story, she also becomes involved in a romantic relationship with a volunteer at the center.

The *Honey* Films' opening and ending credits and the spine and back of their DVD covers all state that the Films are presented, produced, and made

6347583.1

by Defendants.  Specifically, the *Honey* DVD back cover states that
"UNIVERSAL PICTURES presents a MARC PLATT/NUAMERICA
production" and the *Honey 2* DVD cover states that "UNIVERSAL STUDIOS
HOME ENTERTAINMENT presents a MARC PLATT production."  The
DVDs also state that the Films are copyrighted by "Universal Studios."

## III.   The Complaint's Legal Claims.

Ms. Valencia alleges seven Counts:  1) Commercial Appropriation and
Relief For Right of Publicity; 2) Intrusion Upon Seclusion and Solitude; 3)
Deceptive Trade Practices (O.C.G.A. § 10-1-372); 4) False Advertising and
Unfair Competition (15 U.S.C. § 1125(a) and O.C.G.A. § 10-1-390); 5) Fraud
and Unfair Competition (O.C.G.A. § 23-2-55); 6) Trademark Dilution
(O.C.G.A. 10-1-451(B)); and 7) Unjust Enrichment.  (Compl. ¶¶ 16-61.)  Ms.
Valencia requests actual damages, disgorgement of Defendants' profits, costs,
attorney's fees, and other relief "the Court deems proper."  (Id. at p. 19.)

## LEGAL STANDARD FOR RULE 12(B)(6) DISMISSAL

To survive a motion to dismiss, a complaint must allege facts to support
a claim that rises above speculation and is plausible on its face.  Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Application of this standard is especially important when First Amendment interests are at risk, as the mere filing of a lawsuit can impose a chilling effect.  E.g., N.Y. Times Co. v. Sullivan, 376 U.S. 254, 278 (1964).

## ARGUMENT

## I.   The State Law Claims Are Time-Barred.

### A.   The Invasion Of Privacy Claims (Counts 1, 2, and 7).[2]

Claims for invasion of privacy are subject to Georgia's two year statute of limitations for injury to persons.  O.C.G.A. § 9-3-33; Hudson v. Montcalm Pub. Corp., 190 Ga. App. 629, 633 (1989).  Both torts accrue when the privacy injury occurs and the plaintiff could have first brought her claim.  Rivell v. Private Healthcare Sys., Inc., 887 F. Supp. 2d 1277, 1284-85 (S.D. Ga. 2012); Jones v. Hudgins, 163 Ga. App. 793 (1982).  Notably, Georgia courts do not apply the continuing tort doctrine to invasion of privacy torts.  Rivell, 887 F. Supp. 2d at 1285-87; Torrance v. Morris Pub'g Grp., LLC, 281 Ga. App. 563, 566 (2006) (applying general rule of accrual to false light invasion of privacy claim); Sletto v. Hosp. Auth., 239 Ga. App. 203, 207 (1999) (refusing to apply "discovery rule" to public disclosure of private facts claim).

---

[2] The unjust enrichment claim, Count 7, parrots Counts 1.  See Ruffin-Stenbeck v. dePasse, 82 F. Supp. 2d 723, 731 (E.D. Mich. 2000).

Here, Ms. Valencia's claims for misappropriation, right of publicity, and intrusion into seclusion accrued when the *Honey* Films were released.  See Rivell, 887 F. Supp. 2d at 1285.  Undisputedly, *Honey* was released in 2003 and *Honey 2* by 2011.  This lawsuit was filed in 2014, well over the 2 year statute of limitations.  The claims must be dismissed.

**B.     The Georgia Statutory Claims (Counts 3, 4, 5, and 6).**

Ms. Valencia's other Georgia law claims are also time-barred.

The Georgia Fair Business Practices Act, cited in Count Four, has a two-year statute of limitations.  Kason Indus., Inc. v. Component Hardware Grp., Inc., 120 F.3d 1199, 1203 (11th Cir. 1997).  Claims for violations of the Deceptive Trade Practices Act, trademark infringement, and trademark dilution, asserted in Counts 3, 5, and 6, are subject to the four-year limitations period for "injury to personalty."  O.C.G.A. § 9-3-31; Kason, 120 F.3d at 1203.

Like the invasion of privacy claims, each of these claims accrued when the *Honey* Films were released.  SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc., 455 F. Supp. 2d 1347, 1370 (N.D. Ga. 2006) (Georgia's four-year statute of limitation for false endorsement claims accrues when endorsement first becomes "false").  *Honey* was released in 2003, so the limitations period for these claims expired in 2007.  Ms. Valencia's claims under O.C.G.A. §§ 10-1-

372, 10-1-390, 10-1-451, and 23-2-55 regarding *Honey* are therefore time barred.

*Honey 2* was released in 2011; therefore, the Fair Business Practice Act claim, Count 4, is explicitly barred by the two-year limitations period. See Kason, 120 F.3d at 1203. The limitations period for Counts 3, 5, and 6, insofar as it relies upon *Honey 2*, has not expired. However, as these claims are based solely on the film's use of "Honey" in the title and inclusion of a character "inspired by Honey Daniels," Compl. ¶ 9, these claims are barred by laches, as discussed below.

## II.   Laches Bars All Of Ms. Valencia's Lanham Act Claims.

Further, each Count of the Complaint, including the Lanham Act claim, is barred by laches. The equitable defense of laches may be applied to bar claims brought under the Lanham Act and other similar state laws. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517 (11th Cir. 1984); see A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992) (A claimant may not "intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had had notice, could have switched to a non-infringing product."); J. Thomas McCarthy, 6 TRADEMARKS AND UNFAIR COMPETITION §§ 31.1-31.30 (4th ed. 2014) ("McCarthy") (discussing laches and citing cases). Where the complaint

-9-

shows on its face that the claim is barred by laches, dismissal is appropriate. Zelazny v. Lyng, 853 F.2d 540, 544 (7th Cir. 1988) (affirming dismissal on laches grounds where defendant had incurred substantial expensive and administrative changes during plaintiff's eight-year delay).

To establish the defense of laches, a defendant must show: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." Kason, 120 F.3d at 1205.  The Eleventh Circuit presumes improper delay where a claim is filed outside the applicable limitation period. Id.; Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999) (applying analogous state law limitations period "as a baseline for determining whether a presumption of laches exists").

Ms. Valencia's inexcusable delay of ten years before filing suit presumptively bars her Lanham Act claim.  Honey was publicly released in 2003, and Ms. Valencia admits that she has known of the film since its release.  Compl. ¶ 14 ("since the 2003 release, countless people … have approached Plaintiff and identified her as the woman depicted in the film *Honey*"; claiming she was invited to a movie release party); see also Kason, 120 F.3d at 1206 (delay is measured from the time at which the plaintiff knows or should know she has a provable claim for infringement).  Ms.

-10-

Valencia offers no excuse for the delay, and the 10 years she waited before bringing suit are therefore enough to justify applying laches.  Hot Wax, Inc., 191 F.3d at 821 (affirming applicability of laches where plaintiff delayed more than ten years in bringing suit).  Moreover, given her knowledge of *Honey*, Ms. Valencia's claims against *Honey 2* should also be barred by laches because of her three year wait to bring suit, particularly where her claims related solely to the title of *Honey 2*.  See Chattanooga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793-94 (7th Cir. 2002) (laches barred suit against Nike for its Jordan brand of apparel because, during the time that plaintiff failed to sue over Nike's use of JORDAN mark, Nike spent millions developing and promoting a variety of Michael Jordan-branded products).

Ms. Valencia's delay has substantially prejudiced Defendants. "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."  Venus Lines Agency, Inc. v. CVG Int'l Am., Inc., 234 F.3d 1225, 1231 (11th Cir. 2000) (affirming finding that laches barred contract suit where plaintiff's failure to act impaired defendant's ability to seek contribution); Hot Wax, Inc., 191 F.3d at 821 (noting that defendant, if notified earlier, could have changed product or name to avoid alleged infringement); Chattanooga Mfg., 301 F.3d at 793-95 (same).

Here, Defendants were obviously prejudiced by Ms. Valencia's delay: Defendants released a DVD version of *Honey*, continued to promote the film, and then produced and released *Honey 2*.  Had Ms. Valencia timely filed suit, rather than sitting on her alleged claim for a decade, Defendants could have decided against the time and cost of releasing *Honey* on DVD or producing *Honey 2*.  This prejudice amply supports application of laches to bar Ms. Valencia's claims regarding the *Honey* Films.  6 McCarthy §§ 3112-13.

In sum, Ms. Valencia's ten year delay in bringing suit is inexcusable and prejudicial to Defendants.  Laches should be applied to bar her Lanham Act and state law claims regarding the *Honey* Films.

## III.  The *Honey* Films Are Works Of Artistic Expression, And The First Amendment Therefore Bars All Of Ms. Valencia's Claims.

Even if the Complaint were not time-barred, it is barred by the First Amendment as the *Honey* Films are protected works of artistic expression.

This Circuit and others have repeatedly recognized that works of "artistic expression" are protected by the First Amendment.  <u>Univ. of Ala. Bd. Of Trustees v. New Life Art, Inc.</u>, 683 F.3d 1266, 1276-79 (11th Cir. 2012); <u>see also</u> <u>Esch v. Universal Pictures Co.</u>, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010); <u>Club Méditerranée, v. Fox Searchlight Pictures, Inc.</u>, 2004 WL 5589591, at *4 (S.D. Fla. Feb. 17, 2004)  There is no question that the *Honey*

-12-

Films are works of artistic expression as the First Amendment protects "all types of factual, educational, and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." Nichols v. Moore, 334 F. Supp. 2d 944, 956 (E.D. Mich. 2004); see Tyne ex rel. Tyne v. Time Warner Entm't Co. L.P., 204 F. Supp. 2d 1338, 1342, aff'd on other grounds, 425 F.3d 1363 (11th Cir. 2005) (feature length motion picture was protected from invasion of privacy allegations by First Amendment).

The degree of First Amendment protection varies by the type of claim asserted.  Here, the First Amendment:  1) absolutely bars the Complaint's privacy and unjust enrichment claims and 2) bars the trademark-based claims under the "Rogers test" because the *Honey* Films' titles have artistic relevance to its content and are not explicitly misleading as to its source. Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989).

## A. The First Amendment Bars All Claims Based On Defendants' Alleged Appropriation Of Ms. Valencia's Person, Likeness, or Life Story.

Assuming for purposes of this motion that the *Honey* Films were based on Ms. Valencia's life story or that Honey Daniels is inspired by Ms. Valencia, any claim based on Defendants' alleged appropriation of Ms. Valencia's persona, likeness, or life story is absolutely barred by the First Amendment. This is because the *Honey* Films are artistic works, not speech that proposes

-13-

a commercial transaction.  See, e.g., Matthews v. Wozencraft, 15 F.3d 432,

439 (5th Cir. 1994) ("Courts long ago recognized that a celebrity's right of

publicity does not preclude others from incorporating a person's name,

features or biography in a literary work, motion picture, news, or

entertainment story.  Only the use of an individual's identity in advertising

infringes on the persona."); RESTATEMENT (THIRD) OF UNFAIR COMPETITION §

47 (1995) ("use of a person's identity in news reporting, commentary,

entertainment, works of fiction or nonfiction, or in advertising that is

incidental to such uses" is protected under the First Amendment).

As such, Ms. Valencia's misappropriation, right of publicity, intrusion,

and unjust enrichment claims are barred by the First Amendment.  See

Thoroughbred Legends, LLC v. Walt Disney Co., 2008 WL 616253, at *11-12

(N.D. Ga. Feb. 12, 2008) (Martin, J.) (barring claim that defendants

misappropriated plaintiffs' names and likenesses in film about the racehorse

Ruffian under the First Amendment); Esch, 2010 WL 5600989, at *5 (barring

claims that defendants misappropriated plaintiff's likeness in connection

with the film *Despicable Me* under the First Amendment); accord. Armstrong

v. Eagle Rock Entm't, Inc., 655 F. Supp. 2d 779, 786 (E.D. Mich. 2009) (use of

a picture of plaintiff performing could not support a misappropriation claim

because it was "part of this work of artistic expression"); Daly v. Viacom, Inc.,

-14-

238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (dismissing appropriation claim under First Amendment as television show at issue was an expressive work).

> **B.    The First Amendment Bars Ms. Valencia's Claims Based On False Designation Of Origin And Trademark Theories.**

In <u>New Life Art</u>, the Eleventh Circuit joined other Circuits in explicitly requiring courts to "construe the Lanham Act narrowly" when balancing trademark and First Amendment rights and adopted the "artistic relevance and explicitly misleading" analysis set forth by the Second Circuit in <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 999 (2d Cir. 1989), for resolving such conflicts. <u>New Life Art, Inc.</u>, 683 F.3d at 1278 (requiring courts to "weigh the public interest in free expression against the public interest in avoiding consumer confusion").

In <u>Rogers</u>, the Second Circuit addressed a claim that a movie about two fictional Italian dancers, titled "Ginger and Fred," falsely implied that the dancer Ginger Rogers endorsed or was featured in the film.  875 F.2d at 1001. In dismissing the claim, the Second Circuit adopted this balancing test:

> In the context of allegedly misleading titles using a celebrity's name, [the First Amendment] will normally not support application of the [Lanham] Act unless the title has no artistic relevance to the underlying work, whatsoever, or it has some artistic relevance, unless the title explicitly misleads as to the source of the work.

<u>Id.</u> at 997.  The Complaint does not meet this test.

First, the titles *Honey* and *Honey 2* have obvious artistic relevance to the underlying film: the first is the name of the protagonist Honey Daniels in *Honey*, and the second refers to the inspiration for the protagonist in *Honey 2*, who is following in Honey Daniels' footsteps and working at Honey Daniel's studio.  More subtly, the title "Honey" refers to an "attractive woman," giving the public an inkling of what the film will be about.[3]  In short, the *Honey* Films easily meet the "artistic relevance" test, as "the level of relevance merely must be above zero."  <u>E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.</u>, 547 F.2d 1095, 1100 (9th Cir. 2008); <u>see also</u> <u>Rogers</u>, 875 F.2d at 1001 (title "Ginger and Fred" had artistic relevance as the name of the film's lead characters).[4]

Second,  the Complaint does not allege sufficient facts to meet the "explicitly mislead" prong of the <u>Rogers</u> test.  For one, the Complaint does not allege that the title explicitly misleads the public about the film's contents.

---

[3]  http://www.merriam-webster.com/dictionary/honey.

[4]  Regarding the artistic relevance of titles, the <u>Rogers</u> Court explained:
> Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public. The artistic and commercial elements of titles are inextricably intertwined. Film-makers and authors frequently rely on word-play, ambiguity, irony, and allusion in titling their works. Furthermore, their interest in freedom of artistic expression is shared by their audience. The subtleties of a title can enrich a reader's or a viewer's understanding of a work.
<u>Id.</u> at 998.

6347583.1

Second, the titles do not mislead anyone: the Complaint does not allege any fact suggesting that the title was "arbitrarily chosen just to exploit the publicity of [the lead character's] real life counterpart[]," Rogers, 875 F.2d at 1001, or that Defendants engaged in "overt misrepresentation" to consumers about Ms. Valencia's involvement with the Films, such as suggesting that she produced it, see Rebellion Dev. Ltd. v. Strock Entm't, Inc., 2013 WL 1944888, at *5-6 (E.D. Mich. May 9, 2013).

## IV.   Ms. Valencia's Claims Fail As A Matter Of Law.

### A.      The Invasion Of Privacy Claims Do Not State A Claim.

Counts 1 and 2 also fail on the merits.

On Count 1, the misappropriation and right of publicity claims fails because Ms. Valencia does not allege that the *Honey* Films appropriated her actual picture or her real name and because one's "life story" cannot be protected through a misappropriation claim.   E.g., Matthews, 15 F.3d at 438 (the term "likeness" does not include general incidents from a person's life, especially when fictionalized.); Whitehead v. Paramount Pictures Corp., 53 F .Supp. 2d 38, 53 (D.D.C. 1999) (same); Seale v. Gramercy Pictures, 949 F. Supp. 331 (E.D. Pa. 1996) (same).  Ms. Valencia's claims regarding her stage name are actually trademark claims, addressed below.

-17-

Count 2, the intrusion into seclusion claim, does not state a claim because the Complaint does not allege any "physical intrusion analogous to a trespass," by which Defendants obtained any personal or private information. Ass'n Servs., Inc. v. Smith, 249 Ga. App. 629, 632, (2001) (dismissing claim which did not allege any physical intrusion).

**B.      The Lanham Act And State Trademark Claims Do Not State A Claim.**

Counts 3, 4, and 5 also do not state a claim as a matter of law.

**1.      The Trademark Infringement Claims.**

To prevail on a claim of false designation of origin under 15 U.S.C. § 1125(a) and trademark infringement under Georgia law, a plaintiff must demonstrate:  1) she has trademark rights in the mark or name at issue; and 2) the defendant adopted a mark or name so confusingly similar to the plaintiff's mark that consumers are likely to confuse the two.  Lott-Johnson v. Studio 620, 2011 WL 3468372, at *4 (N.D. Ga. Aug. 8, 2011) (Duffey, Jr., J.) (dismissing trademark claim based on book's alleged use of person's name without consent; noting that Georgia trademark law follows federal law).

The trademark infringement claims (Counts 3-5) appear to allege that Defendants infringed Ms. Valencia's "HONEY mark," citing various federal and state laws.  (Compl. ¶¶ 37-54; citing 15 U.S.C. § 1125(a) and O.C.G.A.

§§ 10-1-372, 10-1-390, and 23-2-55.)  Ms. Valencia's theory appears to be that she has trademark rights to the "HONEY" portion of her stage name, Honey Rockwell, and that the use of HONEY as a title or character name in the *Honey* Films infringes her mark.  Not so.

### 2.  Ms. Valencia Has Not Alleged Facts Plausibly Establishing Rights In The Term "HONEY."

Ms. Valencia alleges that she has trademark rights in the term "HONEY" in the dance field based on her use of the term "Honey Rockwell" in a series of videos and appearances.  (Compl. ¶¶ 52-54.)  This reflects a misunderstanding of what constitutes a trademark and what a trademark protects.

A trademark is not a property right.  Just because Ms. Valencia used "Honey Rockwell" as a stage name does not mean she has a mark for that name or for the shorter term HONEY.  Instead, trademarks are earned through use; that is, by using a mark in association with the sale of particular goods and services, the public comes to singularly associate goods and services sold under that mark with the mark's owner.  See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("Trademarks answer … the question 'Who made it?' rather  than 'What is it?'").

As Ms. Valencia has not registered "Honey Rockwell" or HONEY as a trademark, she must be asserting here a common law trademark in HONEY. As such, she must show that she "has a valid commercial interest in the mark that may be harmed by the alleged infringement." 6 MCCARTHY ON TRADEMARKS § 32:12 (2014). Therefore, Ms. Valencia must show that she used HONEY alone, in a trademark sense; that is, she has used HONEY to signify that HONEY is the singular source of goods and services originating from Ms. Valencia. See Throughbreds, 2008 WL 616253, at *5 (granting summary judgment where plaintiff did not use "RUFFIAN" mark to "signify origin to customers and competitors" or in "connection to film production").

Ms. Valencia has simply not alleged that she has ever used HONEY in a trademark sense or has the requisite commercial interest in HONEY, alone. First, Ms. Valencia does not have a trademark for HONEY because she used the stage name "Honey Rockwell;" she cannot claim to have a trademark for a single term from the composite Honey Rockwell name. See Lone Star Steakhouse & Saloon, Inc. v Longhorn Steaks, Inc., 106 F.3d 355, 361-362 (11th Cir. 2007) (owner of "Lone Star Cafe" mark did not have priority trademark rights in "Lone Star" alone). Second, the Complaint does not identify any single good or service sold under the alleged HONEY mark (as opposed to "Honey Rockwell"), and therefore does not plausibly allege that

-20-

any person would associate HONEY with Ms. Valencia as the source of any good or service.  Cf. Thoroughbreds, 2008 WL 616253, at *5-6.

Third, even if Ms. Rockwell used HONEY alone, it is not distinctive.[5] Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) ("[O]nly those marks that are capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks").  Instead, HONEY is at best descriptive, as Ms. Valencia uses "Honey" as a first name.  Id. at 774 (first names are descriptive and require evidence of "secondary meaning" to be protectable).

Ms. Valencia does not allege facts demonstrating that she developed the high degree of "secondary meaning" in HONEY alone, entitling her to a common law mark for the term.  See Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356-58 (11th Cir. 2007).[6]  For example, she does not allege that:  a) she used HONEY alone as a mark before 2003, see Compl. ¶ 13 (Ms. Valencia appeared as "Honey Rockwell" in a "B-Girls" music video and unidentified

---

[5]  Indeed, as shown above, HONEY, singularly and as part of a composite mark, is the subject of 14 Georgia registrations and 52 federal registrations (live and dead). Further HONEY is not unique in the entertainment field (Honey Boo Boo) or even in the dance field (Honey's School of Dance, www.honeysschoolofdanceocala.com).
[6]  "The party seeking trademark protection must demonstrate that its mark acquired secondary meaning before the alleged infringer first began using the mark." Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1189 (11th Cir. 2011) (emphasis in original).

-21-

dance media); or b) that any portion of the public associates the singular term HONEY with Ms. Valencia.  As such, Ms. Valencia has no valid trademark interest in HONEY alone, and her claim must be dismissed.

### 3.      The Fair Use Defense Bars Ms. Valencia's Claims.

Even assuming Ms. Valencia has a valid HONEY mark, Defendant's use of HONEY in connection with the *Honey* Films is a non-actionable, fair use of the term, requiring dismissal.

The fair use defense applies where a defendant uses a trademarked term: a) other than as a mark; b) in a descriptive sense; and c) in good faith. 15 U.S.C. § 1115(b)(4) (statutory basis for fair use defense); Int'l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274-77 (11th Cir. 2006) (discussing defense).  Although fair use is an affirmative defense, it may be applied where its applicability is apparent from the face of the complaint.  E.g., Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009) (dismissing infringement claims at 12(b)(6) stage on fair use defense).

Here, Defendants do not use HONEY to indicate the source of the Films or any other goods and services.  Instead, HONEY is used as a movie title and character name.  Indeed, a cursory review of the DVD covers and the credits of the films shows that Defendants are repeatedly identified as the source of the *Honey* Films.  There is no representation, suggestion, or

-22-

implication that the films originate with Ms. Valencia.  <u>JBCHoldings NY,</u>

<u>LLC v. Pakter</u>, 931 F. Supp. 2d 514 (S.D.N.Y. 2013) (challenged term

accompanied by defendant's "own, conspicuously visible mark generally does

not constitute trademark use").

In other words, the Complaint contains no factual allegation plausibly

establishing that Defendants used the term HONEY to suggest to consumers

that Ms. Valencia made the *Honey* Films in order to "confuse" them into

purchasing the movie or that Defendants adopted the term HONEY in bad

faith.  <u>See</u> <u>Int'l Stamp Art</u>, 456 F.3d at 1274 (setting forth standard for good

faith prong of fair use defense).  To the contrary, the sole factual allegation

approaching an accusation of bad faith is Ms. Valencia's claim that

Defendants knew of the Honey Daniels character's "strong similarity to

Plaintiff" when producing *Honey* in 2003.  (Compl. ¶ 15.)  This allegation,

however, does not establish bad faith.  Knowledge of Ms. Valencia is not

notice of her alleged trademark rights to "Honey," particularly when

Defendants clearly identified themselves as the source of the *Honey* Films.

<u>Int'l Stamp Art</u>, 456 F.3d at 1277 ("knowledge alone, in the context of a non-

trademark, descriptive use – particularly when there is affirmative evidence

of an intent not to confuse, and no direct evidence to the contrary – is

insufficient to raise a genuine issue of material fact as to good faith").

-23-

Ms. Valencia's trademark claims should therefore be dismissed.  E.g.,

Naked Cowboy v. CBS, 844 F. Supp. 2d 510, 515–16 (S.D.N.Y. 2012)

(dismissing complaint under Rule 12(b)(6) because use of "naked cowboy" was

fair use, particularly where "CBS logo" was prominently displayed on

challenged program and complaint did not allege any "facts which, if true,

would lead to the conclusion that CBS sought to gain advantage by

associating its television program with the Naked Cowboy"); Arnold v. ABC,

Inc., 2007 WL 210330, at *3 (S.D.N.Y. Jan. 29, 2007) ("prior knowledge of a

senior user's mark does not, without more, create an inference of bad faith";

knowledge of plaintiff's mark not enough to defeat fair use defense at Rule

12(b)(6) stage); accord JBCHoldings, 931 F. Supp. 2d at 531 (conclusory

allegations of malicious intent do not defeat fair use defense).

### C.   The Dilution Claim (Count 6) Is Barred Because Ms. Valencia Did Not Register "HONEY" As A Trademark.

Count 6 of the Complaint, asserting "trademark dilution," is barred

because Ms. Valencia has not registered HONEY as a mark in Georgia.

Diedrich v. Miller & Meier & Assoc., 254 Ga. 734, 736 (1985) (registration of

mark is "a prerequisite to relief" under O.C.G.A. § 451(B)).

**D.      The Unjust Enrichment Claim (Count 7) Is Barred As It Duplicates Ms. Valencia's Other Claims.**

Finally, the unjust enrichment claim (Count 7), based on Defendants' "sale, distribution and airing" of the *Honey* Films and alleged use of the HONEY mark, Compl. ¶¶ 56-57, is barred because it duplicates Plaintiffs' misappropriation, false designation of origin, and unfair competition claims and cannot stand on its own.  Ruffin-Steinback, 82 F. Supp. 2d at 731 (dismissing unjust enrichment and conspiracy claims because Lanham Act and right of publicity claims were based on same facts); see also Hustler Magazine, Inc. v. Falwell, 485 U.S. 46 (1988) (plaintiff cannot disguise claims as other causes of action to avoid the First Amendment's burden of proof)).

## VI.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this case be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

-25-

Respectfully submitted this 30th day of April, 2014.

/s/ Jacquelyn N. Schell
Eric P. Schroeder (Ga. Bar No. 629880)
Luke A. Lantta (Ga. Bar No. 141407)
Jacquelyn N. Schell (Ga. Bar No. 111002)

BRYAN CAVE LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999
eric.schroeder@bryancave.com
luke.lantta@bryancave.com
jacquelyn.schell@bryancave.com

*Counsel for Defendants*

-26-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send electronic notification to all counsel of record.

Respectfully submitted, this 30th day of April 2014.

/s/ Jacquelyn N. Schell
Jacquelyn N. Schell (Ga. Bar No. 111002)
Jacquelyn.Schell@bryancave.com

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

Respectfully submitted, this 30th day of April 2014.

/s/ Jacquelyn N. Schell
Jacquelyn N. Schell (Ga. Bar No. 111002)
Jacquelyn.Schell@bryancave.com

6347583.1