IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Ereina "Honey Rockwell" Valencia, <br><br> Plaintiff, <br><br> v. <br><br> Universal City Studios LLC and Marc Platt Productions, <br><br> Defendants. | CASE NO.: <br> 1:14-CV-00528 |

## REPLY BRIEF SUPPORTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Universal City Studios LLC and Marc Platt Productions, Inc. submit this reply brief supporting their Motion to Dismiss the Amended Complaint.

## INTRODUCTION

Ms. Valencia acknowledges that she waited over a decade after the motion picture *Honey* was released in 2003 before filing her lawsuit. She claims the delay was due to her "not knowing who to sue." Even if credible,[1] this excuse would not defeat the statute of limitations or laches, which bar Ms. Valencia's claims. The Complaint should be dismissed on timeliness alone.

---

[1] And it is not. The credits of *Honey* and the DVD cover both clearly list Defendants as the proper parties to sue from 2003 through 2013.

The First Amendment also bars the Complaint unless Ms. Valencia can show that the title "Honey" has <u>zero</u> artistic relevance to the *Honey* Films and that the title "explicitly" misled the public into thinking she sponsored the Films. In response to the Motion, Ms. Valencia asserts only that a First Amendment defense cannot be decided on a motion to dismiss. That assertion is wrong.

Finally, the Complaint does not state a claim. Ms. Valencia does not have a privacy interest in her "life story," she has not stated an intrusion claim, and she has no trademark right in "Honey," standing alone.

In sum, the Complaint can be dismissed for at least three (3) independent reasons. The Motion to Dismiss should be granted.

## FACTS

Ms. Valencia does not dispute the following dispositive facts:

A. *Honey* was released in 2003, and *Honey 2* was released in 2011 (together, the "*Honey* Films");

B. Ms. Valencia knew of *Honey* soon after its release, Compl. ¶ 14;

C. The *Honey* Films' credits identify Defendants as the source of the Films;

D. The *Honey* Films' DVD spines and back covers identify Defendants as the source of the Films;

E. The Films do not use Ms. Valencia's image or given name;

    F.    Ms. Valencia does not contend that Defendants committed any physical intrusion that invaded her privacy, but rather, that they "somehow monitored … [her] highly personal affairs;"

    G.    Ms. Valencia did not use "Honey," alone, as her stage name before (or after) 2003;

    H.    Ms. Valencia has not registered HONEY as a mark; and

    I.    Ms. Valencia does not identify in what context "HONEY" designates goods or services originating only with her.

Ms. Valencia claims that she waited from 2003 until 2014 to file suit "due to lack of sophistication with respect to the intricacies and workings of the movie industry," claiming she needed a lawyer to determine who to sue. (Plaintiff's Response Brief ("Pl. Resp.") p. 7 ("…Honey was only able to ascertain, after seeking the advice of counsel, the true identity of the entities responsible for the production of these films").) She does not explain, however, why she did not seek a lawyer prior to now.

## ARGUMENT

**I.    The State Law Claims Are Time-Barred.**

    **A.    The Invasion Of Privacy Claims (Counts 1, 2, and 7).**

The statute of limitations here was not tolled by: (1) the discovery rule; (2) the continuing tort rule; or (3) "equitable tolling." (Pl. Resp. pp. 5-10.)

First, claims for invasion of privacy do not accrue when a plaintiff "discovers" her injury; they accrue when the plaintiff could have <u>first</u> brought her claim. <u>Rivell v. Private Healthcare Sys., Inc.</u>, 887 F. Supp. 2d 1277, 1284-85 (S.D. Ga. 2012). This means that the statute began to run for Ms. Valencia when the *Honey* Films were released in 2003 and 2011. <u>See</u> <u>Sletto v. Hosp. Auth.</u>, 239 Ga. App. 203, 207 (1999) (rejecting discovery rule for invasion of privacy claim based on unauthorized release of records; statute "began to run" at records' release, not plaintiff's discovery of their release); <u>cf.</u> <u>Goodson v. Boston Scientific Corp.</u>, 2011 WL 6840593, at *2 (N.D. Ga. 2011) (granting motion to dismiss based, in part, on plaintiff's failure to satisfy her burden regarding applicability of discovery rule).

As explained by Judge Duffey of this Court several years ago:

> Georgia statutes of limitation generally begin to run when the facts giving rise to the claim occur, regardless of when a plaintiff discovers them. The limitations period accrues when the injury complained of is first sustained. Even if a tort or negligence is continuing, the statute of limitations generally accrues from the happening of the injury. Although the injury must be concrete rather than speculative for the clock to begin to run, ***plaintiff's ignorance of the facts constituting a cause of action does not toll it***.

<u>In re Pac One, Inc.</u>, 2007 WL 2083817, at *3 (N.D. Ga. Jul 17, 2007) (cit. omitted; emphasis added). As such, the discovery rule is "confined to cases of

bodily injury which develop only over an extended period of time." Autumn Trace Homeowners Assoc., Inc. v. Brooks, 238 Ga. App. 107, 107 (1999).

Ms. Valencia cites several cases in support of her "late discovery" theory, Pl. Resp. pp. 6-7, but none involve invasion of privacy claims. E.g., Amu v. Barnes, 283 Ga. 549 (2008) (medical malpractice action). Moreover, Ms. Valencia suggests that her claim did not accrue until she recently "discovered she was injured" by the Films and further "discovered" who the proper defendants were in this case. (Pl. Resp. p. 7.) The argument is meritless for three reasons: (1) Ms. Valencia's ignorance and lack of diligence in seeking out the proper defendants is the "ignorance of facts" that does not toll the limitations period, In re Pac One, Inc., 2007 WL 2083817, at *3; (2) counsel's claim that Ms. Valencia was "recently made aware of the film's existence" is contradicted by the Complaint itself, which alleges that she knew of the film at its release, see Compl. ¶ 14; and (3) the movies and subsequent DVDs all clearly identified Universal and Marc Platt Productions as the proper defendants. Ms. Valencia's claim that "distributor deals" prevented her from determining the source of her alleged injury does not excuse her failure to take any action at all. See Bitterman v. Emory Univ., 175 Ga. App. 348 (1985) (limitations period not tolled because plaintiff did

not discover "causal relationship between his injury" and alleged misconduct; statute cannot be tolled by "forestalling medical attention").

Second, Georgia does not apply the continuing tort doctrine to invasion of privacy claims. Rivell, 887 F. Supp. 2d at 1285-87; Torrance v. Morris Pub'g Grp., LLC, 281 Ga. App. 563, 566 (2006) (applying general accrual rule to invasion of privacy claim). Plaintiff cites no case to the contrary.[2]

Third, Ms. Valencia's invocation of the "equitable tolling" doctrine is misplaced, if not frivolous. "In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness must be the result of circumstances beyond his control." Drew v. Dept. of Corrections, 297 F.3d 1278,1286-87 (11th Cir. 2002). Equitable tolling is an "extraordinary remedy," "applied sparingly" and reserved for the unusual

---

[2] And no such case exists. The continuing tort rule does not apply to invasion of privacy claims due to "single publication" rule, which protects against "a multiplicity of suits and an almost endless tolling of the statute of limitations … by requiring a plaintiff to collect all of his damages in one action, and establish that the statute of limitations is to run from the date of initial publication." McCandliss v. Cox Enter., Inc., 265 Ga. App. 377, 379 (2004); see Rives v. Atlanta Newspapers, 220 Ga. 485 (1964). The rule has its roots in the First Amendment, as "a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas." McCandliss, 265 Ga. App. at 379. It has been applied by numerous courts to invasion of privacy claims based on a publication. 2 McCarthy, RIGHTS OF PUBLICITY AND PRIVACY § 11:20 (2014).

circumstance that is "both beyond [plaintiff's] control and unavoidable even with diligence." Id. at 1286.

Ms. Valencia has not met her initial burden of showing that she acted with any diligence in pursuing her claims. After *Honey* was released, Ms. Valencia did not contact Defendants, hire a lawyer, or anything else. Instead, she apparently did nothing. Regardless, the failure to file suit for ten years is enough to warrant rejection of tolling. See Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 94-95 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

Further, the Eleventh Circuit has reserved equitable tolling for "extraordinary" situations, for example, where a plaintiff could not timely pursue her claims due to her fear of "state sponsored acts of violence and oppression" due to a war in El Salvador. Arce v. Garcia, 434 F.3d 1254, 1265 (11th Cir. 2006). Ms. Valencia's situation is by no means "extraordinary:" Her claim that she needed counsel to determine who to sue is not beyond her control, and her "ignorance of the law does not, on its own, satisfy the constricted extraordinary circumstances test." Jackson v. Astrue, 506 F.3d 1349, 1356 (11th Cir. 2007); see also Horsley v. Univ. of Alabama, 2014 WL 1797019, at *2 (11th Cir. May 7, 2014) (pro se status and ignorance of the

judicial process do not "warrant application of equitable tolling").  Equitable tolling does not apply here.

### B. The Georgia Statutory Claims (Counts 3, 4, 5, and 6).

Ms. Valencia does not offer any separate argument as to why her Georgia statutory claims are not time-barred. (Pl. Resp. p. 7, n. 2.)  Therefore, as discussed above, these claims are time barred as well.

## II. Laches Bars All Of Ms. Valencia's Lanham Act Claims.

Ms. Valencia claims that application of laches here is "ridiculous." (Pl. Resp. p. 10.)  Ms. Valencia's hyperbole is scant cover for a lack of argument.

Laches applies here.  First, because Ms. Valencia's delay caused her to file suit well outside any analogous time period, she bears the burden of showing that laches does not apply.  E.g., Barrois v. Nelda Faye, Inc., 597 F.2d 881, 884 (5th Cir. 1978) (if claim is brought "[a]fter the analogous statutory period … we have consistently found that the plaintiff bears the burden of showing excusable delay or lack of prejudice to the defendant"); Vega v. The Malula, 291 F.2d 415, 416 (5th Cir. 1961) ("passage of time beyond the analogous statute of limitations is presumed to have caused a substantial detriment"); Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123 (3d Cir. 2005) (7-year delay; case dismissed where presumption of laches not rebutted); Nartron Corp. v. STMicroelectronics,

Inc., 305 F.3d 397 (6th Cir. 2002) (11 year delay; laches presumption not rebutted; case dismissed); Chattanooga Mfg., Inc. v. Nike, Inc., 301 F.3d 789 (7th Cir. 2001) (9-year delay; presumption not rebutted; case dismissed).

Ms. Valencia has not asserted any excusable delay. Waiting ten years to file suit after *Honey*'s release in 2003 due to a "lack of sophistication with respect to the movie industry" and an alleged "shell game" of distribution deals is patently not excusable neglect. E.g., Environmental Defense Fund, Inc. v. Alexander, 614 F.2d 474, 479 (5th Cir. 1980) ("[L]aches does not depend on subjective awareness of the legal basis on which a claim can be made.").

Further, Ms. Valencia offers no argument, fact, or evidence to overcome the presumption that her 10-year delay prejudiced Defendants.[3] Her bald assertion that Defendants' explanation of the prejudice occasioned by her ten-year delay is "comical" is again, scant cover for an absent argument, particularly as Ms. Valencia does not dispute that Defendants committed substantial financial resources to market the *Honey* Films. See, e.g., Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir. 1996) (applying laches where five-year delay in bringing suit "precluded the possibility that

---

[3] Contrary to Plaintiff's claim, Defendants have not "admitted tortious conduct." (See Pl. Resp. p. 11.)

[defendant] could effectively adopt an alternative marketing position"); J. Thomas McCarthy, 6 TRADEMARKS AND UNFAIR COMPETITION §§ 31.23 (4th ed. 2014).  Dismissal is appropriate.

### III.  The First Amendment Bars All Of Ms. Valencia's Claims.

In addition, the Complaint is barred by the First Amendment.

#### A.  Defendants' First Amendment Defense Is Ripe For Decision.

Ms. Valencia does not rebut that the First Amendment bars Count I, her misappropriation / right of publicity claim.  (Compare Motion pp. 13-15 with Pl. Resp. pp. 11-12.)  Instead, she argues that the issue is not ripe because Defendants cited only summary judgment rulings on the issue.

She is wrong.  First, the Motion cited several cases deciding motions to dismiss on First Amendment grounds.  E.g., Esch v. Universal Pictures Co., 2010 WL 5600989, at *5 (N.D. Ala. 2010) (dismissing invasion of privacy claim based on *Despicable Me* due to First Amendment); Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (same; First Amendment barred claim against Viacom for television show "Bands on the Run").

Second, numerous courts have dismissed invasion of privacy and Lanham Act claims on First Amendment grounds.  Rebellion Devel. Ltd. v. Stardock Entertainment, Inc., 2013 WL 1944888, at *4 (E.D. Mich. 2013)

(citing "ample case law applying the First Amendment in motions to dismiss").[4] Ms. Valencia cites no reason why this Court cannot decide the First Amendment issue now, and indeed the *Honey* Films are properly before the Court for consideration. Brown v. Electronic Arts, Inc., 724 F.3d 1235, 1248 (9th Cir. 2013) (granting dismissal on First Amendment grounds; statement that title had no artistic relevance to videogame was legal conclusion unsupported by properly-pled factual allegations).

### B. The First Amendment Bars Ms. Valencia's Claims Based On False Designation Of Origin And Trademark Theories.

Ms. Valencia agrees that the Rogers v. Grimaldi test determines whether the First Amendment bars her Lanham Act and trademark claims, but states that the title "Honey" has no artistic relevance to the Films and that Defendants misled the public by using that title. (Pl. Resp. p. 12.)

Her conclusory argument is meritless. First, Ms. Valencia bears the burden of showing that "Honey," as a title, has absolutely zero artistic relevance to the film. Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir. 1989)

---

[4] See Fortres Grand Corp. v. Warner Bros. Enter. Inc., 947 F. Supp. 2d 922, 931 (N.D. Ind. 2013) (phrase "Clean Slate" in *The Dark Knight Rises* protected by First Amendment); Louis Vuitton Malletier v. Warner Bros., 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (rejecting argument that First Amendment defense could not be decided on motion to dismiss); accord Henderson v. Zenimax Media, Inc., 2013 WL 308765, at *4 (D. Ariz. 2013); Eastland Music Group, LLC v. Lionsgate Enter., Inc., 2012 WL 2953188, at *3 (N.D. Ill. 2012).

(title must have "no artistic relevance to the underlying work whatsoever"); E.S.S. Enter. 2000 Inc v. Rock Star Videos, Inc., 547 F.3d 1095, 1100 (9th Cir. 2008) ("the level of relevance merely must be above zero"). "Honey" has artistic relevance to the Films: Honey is the name of the lead character, and it evokes the image of a young, attractive woman. Ms. Valencia's bare statement that *Honey*'s title has no artistic relevance is a legal conclusion and is insufficient to stave off dismissal. Electronic Arts, 724 F.3d at 1248.

Second, Ms. Valencia does not show that Defendants "explicitly misled" the public about Ms. Valencia's involvement in the film. "To be 'explicitly misleading,' the defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic." Fortres, 947 F. Supp. 2d at 932 (quoting Dillinger, LLC v. Electronic Arts, Inc., 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011)); see also Rogers, 875 F.2d at 1001. Ms. Valencia does not even attempt to meet this standard. Dismissal is appropriate.

## IV. Ms. Valencia's Claims Fail As A Matter Of Law.

Although the Court need not reach this issue, Ms. Valencia's response confirms that the Complaint fails on the merits.

### A. Ms. Valencia Does Not State A Claim For Invasion Of Privacy.

Count 1 fails because, even if true, Defendants' alleged unauthorized use of Ms. Valencia's "life story" would not be an appropriation of her "name and likeness." A "likeness" is an actual image, not a "life story." E.g., Matthews v. Wozencraft, 15 F.3d 432, 439 (5th Cir. 1994). Ms. Valencia cites no case stating than an (alleged) appropriation of someone's life story is actionable – to the contrary, "unauthorized" biographies are published all the time. Further, a plaintiff must show that the public uniquely associates the "stage name" with her before being allowed to proceed with a claim that someone else misappropriated it. Ms. Valencia cannot make this showing, as further discussed below.

Count II fails because Ms. Valencia does not allege the "physical intrusion" required to state a claim for intrusion into seclusion. Ass'n Servs., Inc. v. Smith, 249 Ga. App. 629, 632 (2001). Her conspiracy-level speculation that Defendants must have committed a trespass because they "somehow monitored" her "highly personal affairs," Pl. Resp. p. 15, does not meet the Iqbal/Twombly plausibility standard.

## B. The Lanham Act/Trademark Claims Do Not State A Claim.

Finally, the Lanham Act and trademark claims fail for the reasons stated in the Motion and, more specifically, because Ms. Valencia has not shown a protectable interest in the term "Honey" alone.

Ms. Valencia cites no case, treatise, or doctrine suggesting that her use of "Honey Rockwell" gave her ownership of the singular term "Honey." The law is to the contrary. Lone Star Steakhouse & Saloon, Inc. v Longhorn Steaks, Inc., 106 F.3d 355, 361-362 (11th Cir. 2007) (owner of "Lone Star Cafe" mark did not have priority trademark rights in "Lone Star" alone).

Further, Ms. Valencia does not allege facts suggesting that the public identified her (and only her) as the only source of "Honey"-labeled products or services in the dance field in 2003, as required to meet her burden under Iqbal/Twombly. See Tana v. Dantanna's, 611 F.3d 767, 774 (11th Cir. 2010).[5] Ms. Valencia does not identify any product or service that she disseminated (before 2003 or ever) that referred to her as "Honey," alone. She does not

---

[5] See generally Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1189 (11th Cir. 2011) ("A name has acquired secondary meaning when the primary significance of the term in the minds of the [consuming] public is not the product but the producer. The determination of whether a mark has acquired secondary meaning depends on the length and nature of the name's use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business, and the degree of actual recognition by the public that the name designates the proprietor's product or service.").

come close to alleging the long standing use and promotional expense required to establish secondary meaning in "Honey" and survive a motion to dismiss.  <u>Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.</u>, 2012 WL 3240442, at *7 (S.D.N.Y. 2012) ("Although the Amended Complaint does allege that plaintiff's trade dress has become associated with the [plaintiff's product] in the eyes of the public, there are no facts alleged to support this conclusion.").  With due respect to Ms. Valencia, a handful of music videos and dance productions before 2003 identifying her as "Honey Rockwell" does not give her the right to forevermore bar the use of the word "Honey" by anyone else in the dance field.  <u>Tillery v. Leonard & Sciolla</u>, 437 F. Supp. 2d 312, 321-23 (E.D. Pa. 2006) (finding no secondary meaning in former partner's surname; at best, attorney had trademark in his full name).  Dismissal is appropriate.

## CONCLUSION

Defendants respectfully request that this case be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted this 29th day of May 2014.

/s/ Jacquelyn N. Schell  
Eric P. Schroeder (Ga. Bar No. 629880)  
Luke A. Lantta (Ga. Bar No. 141407)  
Jacquelyn N. Schell (Ga. Bar No. 111002)

                                      BRYAN CAVE LLP
                                      One Atlantic Center – 14th Floor
                                      1201 West Peachtree Street, NW
                                      Atlanta, Georgia 30309
                                      Telephone:  (404) 572-6600
                                      Facsimile:   (404) 572-6999
                                      eric.schroeder@bryancave.com
                                      luke.lantta@bryancave.com
                                      jacquelyn.schell@bryancave.com

                                      *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send electronic notification to all counsel of record.

Respectfully submitted, this 29th day of May 2014.

/s/ Jacquelyn N. Schell
Jacquelyn N. Schell (Ga. Bar No. 111002)
Jacquelyn.Schell@bryancave.com

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

Respectfully submitted, this 29th day of May 2014.

/s/ Jacquelyn N. Schell
Jacquelyn N. Schell (Ga. Bar No. 111002)
Jacquelyn.Schell@bryancave.com