**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| EREINA "HONEY ROCKWELL" VALENCIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:14-CV-00528-RWS |
| | : | |
| UNIVERSAL CITY STUDIOS LLC and MARC PLATT PRODUCTIONS, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants' Universal City Studios

LLC and Marc Platt Productions Motion to Dismiss Amended Complaint [8]

and Request for Oral Argument [10].  After reviewing the record, the Court

enters the following Order.

### Background

Plaintiff Ereina "Honey Rockwell" Valencia brings this action against

Defendants Universal City Studios LLC ("Universal City") and Marc Platt

Productions ("Marc Platt") (collectively, the "Defendants") alleging invasions

of privacy; fraud, false advertising, and unfair competition; and trademark

dilution.  Plaintiff alleges diversity jurisdiction under 28 U.S.C. § 1332 as the

basis for this Court's subject matter jurisdiction.[1]  Because this matter is before

the Court on a motion to dismiss, the Court accepts as true the allegations in

Plaintiff's Amended Complaint [5].

Plaintiff is a hip hop dancer and dance teacher who has performed under

the stage name "Honey Rockwell" since 1994.  Plaintiff, a native of the Bronx

and of Hispanic descent, performed and taught dance at various community

dance centers and theaters in the Bronx, New York.  In addition to performing

and teaching hip hop dance in the Bronx, Plaintiff appeared in various

international and domestic dance productions; created, produced, and released a

music video; and appeared in various dance magazines.

In 2003, Defendants released the film *Honey*, which chronicles the

dreams and struggles of Honey Daniels, a native of the Bronx of Hispanic

descent who performs and teaches hip hop dance in the Bronx.  In 2011,

Defendants released the film *Honey 2*, a sequel in which a hip hop dancer

_____

[1]  Defendants are residents of Delaware and California.  The Amended
Complaint does not indicate Plaintiff's state of residence.  However, Defendants do
not challenge the basis of diversity jurisdiction.  The Court assumes for purposes of
this Order that Plaintiff is a citizen of either Georgia or New York.

inspired by Honey Daniels achieves success and fame.  At the core of her Amended Complaint,  Plaintiff alleges that these films misappropriated and exploited her persona and life story.

Defendant Universal City[2] owns the copyrights and exclusive rights under copyright in *Honey* and *Honey 2* (collectively, the "*Honey* films"). Plaintiff alleges that Defendants appropriated Plaintiff's name, picture, likeness, and identity through their release of the *Honey* films.  In support, Plaintiff points to the following facts: 1) Plaintiff assumed the stage name of "Honey"[3] in 1994; 2) both Plaintiff and "Honey Daniels" are Hispanic women; (3) both teach hip hop dance in the Bronx and appear in hip hop music videos; and (4) both were affiliated with dance studios the Bronx Dance Theater and Hunts Point.  Plaintiff further alleges that a producer for the film was notified of "Honey Daniels's" similarity to Plaintiff.  Finally, Plaintiff alleges that she has been approached and identified as the dancer depicted in *Honey* and on one

---

[2]  Plaintiff does not specifically allege a separate basis for naming Marc Platt Productions as a co-defendant, and treats the Defendants as a single entity for the purposes of the Amended Complaint.  Because Defendant Universal City and Defendant Marc Platt Productions move together to dismiss the Amended Complaint, the Court will treat the Defendants as a unified entity for the purposes of this Order.

[3]  The Court notes, more precisely, that Plaintiff assumed the stage name "Honey Rockwell."  This distinction will be discussed further, *infra*, at Part II.B.

3

occasion was contacted to appear at a movie release party as "the real [H]oney."

Plaintiff claims that these similarities and alleged confusion has damaged her

personal brand as dancer.  Plaintiff alleges that it appears that Plaintiff has

copied the likeness of Defendants' character rather than vice versa, and that

Defendants' actions have thus undermined her reputation and the value of her

name and image.

Plaintiff filed suit on February 21, 2014 and amended her Complaint on

April 3, 2014.  The Amended Complaint asserts seven claims.  Count I alleges

commercial appropriation and relief for right of publicity violations.  Count II

alleges intrusion upon Plaintiff's seclusion and solitude.  Count III alleges

deceptive trade practices under O.C.G.A. § 10-1-372.  Count IV alleges false

advertising and unfair competition under 15 U.S.C. § 1125(a) and O.C.G.A.

§ 10-1-390.  Count V alleges fraud and unfair competition under O.C.G.A.

§ 23-2-55.  Count VI alleges trademark dilution in violation of O.C.G.A. § 10-

1-451(B).  Count VII alleges unjust enrichment.  Plaintiff seeks actual and

punitive damages, a disgorgement of Defendants' profits, costs, and attorneys'

fees.

4

Defendants have since filed a Motion to Dismiss the Amended Complaint in its entirety [8] and Plaintiff responded [13].  The Court now considers Defendants' motion.

## Discussion

### I.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most

AO 72A
(Rev.8/82)

favorable to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." <u>D.L. Day v. Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005); <u>see also</u> Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  <u>D.L. Day</u>, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the

6

attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." Id.

In this case, Plaintiff brings claims against Defendants arising out of Defendants production and marketing of the films *Honey* and *Honey 2* as stated in the Background section, supra.  Using the framework articulated above, the Court considers Defendants' Motion to Dismiss.

## II.    Analysis

As stated, Defendants move to dismiss the Amended Complaint in its entirety.  In support of their motion, Defendants argue that: (1) Plaintiff's claims are barred by the applicable statutes of limitations and the equitable doctrine of laches; (2) Plaintiff's claims are barred by the First Amendment as attacking works of artistic expression; and (3) Plaintiff's claims fail as a matter of law because she does not have a protectable interest in her life story or any valid trademark interest in the word or mark "Honey."  The Court considers each basis for dismissal in turn.

A.      Statutes of Limitation and the Doctrine of Laches

Defendants first move to dismiss Plaintiff's claims on the basis of statutes of limitations.

1.      *Privacy Torts (Counts I and II)*

In Georgia, causes of action for privacy torts must be brought within two years of the injury's occurrence.  O.C.G.A. § 9-3-33; Hudson v. Montcalm Pub. Corp., 379 S.E.2d 572, 577 (Ga. App. 1989).  The cause of action accrues when the tortious act occurs.  See Rivell v. Private Health Care Sys., Inc., 887 F. Supp. 2d 1277, 1284-85 (S.D. Ga. 2012) (citing Everhart v. Rich's, Inc., 194 S.E.2d 425, 428 (Ga. 1972));  Hudson, 379 S.E.2d at 577.

Defendants assert that the statute of limitations on Plaintiff's causes of action for the privacy torts asserted in Counts I and II expired in 2013, two years after the release of *Honey 2*.  (Mem. of Law Supporting Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mem."), Dkt. [8-1] at 7-8.)  Plaintiff first relies on the "discovery rule" to argue that her claims are not time-barred because she was "only able to ascertain, after seeking the advice of counsel, the true identity of the entities responsible for the production of [the *Honey*] films."  (Pl.'s Resp. to Defs.' Mot. to Dismiss Am. Compl. ("Pl.'s Resp."), Dkt. [13] at 7.)  Next,

8

Plaintiff argues that the statute of limitations was tolled under the continuing tort doctrine because Defendants continued to act tortiously through their licensing of the *Honey* films.  (Id. at 8.)  Finally, Plaintiff argues that the Court should invoke the doctrine of equitable tolling to allow her claim to move forward, again relying on the "intricacies and nuances associated with the movie industry" that "shielded" Defendants' identities.  (Id. at 9.)

A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred.  Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013), cert. denied 135 S. Ct. 58 (2014) (internal citation omitted).  A statute of limitations defense can support dismissal under Rule 12(b)(6) only if it is clear from the face of the complaint that the statute of limitations has run, and it appears beyond doubt that the plaintiff can prove no set of facts that toll the statute.  F.D.I.C. v. Cameron, 986 F. Supp. 2d 1337, 1339-40 (N.D. Ga. 2013) (citing Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008); Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted)).

The Court finds that the privacy torts as alleged by Plaintiff in Counts I and II of the Amended Complaint are barred by Georgia law's statute of limitations, codified at O.C.G.A. § 9-3-33, and thus subject to dismissal.  First, the discovery rule does not apply to privacy torts.  Sletto v. Hosp. Auth., 521 S.E.2d 199, 202 (Ga. App. 1999) (declining to apply the discovery rule to claims for invasion of privacy and emotional distress because "that rule has been confined to cases of bodily injury which develop only over an extended period of time").  Accordingly, Plaintiff's claims should have been brought within two years of the alleged tortious act–the release of the *Honey* films. Further, the Court is not persuaded by Plaintiff's argument that she could not have brought suit earlier due to her unfamiliarity with the film industry.  The law is well-established that "mere ignorance of the existence of a right of action, absent the element of fraud, does not toll a statute of limitation." Everhart, 194 S.E.2d at 429.  Here, Plaintiff has not alleged that Defendants acted fraudulently, merely that she was unable to ascertain their identities without the advice of counsel.  The Court finds that these facts are also insufficient to toll the statute of limitations under Plaintiff's alternative argument of equitable tolling.

10

Nor does the continuing tort doctrine operate to toll the statute of limitations in this case.  Georgia law provides that "[t]he test to be applied in determining when the statute of limitations begins to run against an action sounding in tort is in whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action." Adams v. Emory Univ. Clinic, 347 S.E.2d 670, 672 (Ga. App. 1986) (quoting Hoffman v. Ins. Co., 245 S.E.2d 287, 289 (Ga. 1978)).  Even if the initial tortious act continues to cause subsequent damage, if the act is a completed wrong, then the statute of limitations begins to run at the time of the act.  Id.  The theory of continuing tort "applies 'where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time.'" Mears v. Gulfstream Aerospace Corp., 484 S.E.2d 659, 664 (Ga. App. 1997) (quoting Everhart, 194 S.E.2d 425).  While Georgia courts recognize the theory of continuing tort, they "have been reluctant to apply this theory broadly." Id.  Further, the "discovery rule" applies to continuing torts – the cause of action "accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." Waters v. Rosenbloom, 490 S.E.2d 73, 75 (Ga. 1997).

11

The tortious acts alleged here–right of publicity violations and intrusion upon seclusion and solitude–do not belong in the narrow category of torts to which courts apply the continuing tort doctrine. Cf., e.g., Mears, 484 S.E. 2d at 664 ("a series of acts allegedly causing emotional distress should be viewed cumulatively"); accord Master Mind Music, Inc. v. Block Enters., LLC, No. 1:12-cv-162-RWS, 2012 WL 6625754 (Dec. 18, 2012) (holding that the continuing tort doctrine did not apply because the complete harm occurred when plaintiff's albums were released without crediting plaintiff as co-producer or copyright owner). Plaintiff alleges no facts and provides no authority to support her position that "Defendants have continued their tortious conduct through, *inter alia*, continued licensing of the *Honey* films." (Pl.'s Resp., Dkt. [13] at 8.) What is more, Plaintiff expressly acknowledges in her Amended Complaint that she has been aware of the release of the *Honey* films since 2003. (Am. Compl., Dkt. [5] ¶ 14.) As such, even if the continuing tort doctrine were to apply in this case, Plaintiff's claims would still be barred by the discovery rule, discussed supra. See also Thomason v. Gold Kist, Inc., 200 Ga. App. 246, 248, 407 S.E.2d 472, 475 (1991) (affirming summary judgment for defendants where evidence showed that plaintiffs had suspected that chemical sold by

12

defendants was the cause of their alleged injuries more than two years before they filed suit).  Her privacy claims enumerated in Counts I and II are therefore **DISMISSED**.

        2.     *Statutory Causes of Action (Counts III–VI)*

A four year statute of limitations applies to the statutory causes of action enumerated in Counts III, IV, V, and VI.  As such, these claims are timely to the extent they are based on *Honey 2* and are not subject to dismissal pursuant to a statute of limitations.  The Court further finds that consideration of the affirmative defense of laches is inappropriate at the motion to dismiss stage of this case.  See Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517 (11th Cir. 1984) (for Lanham Act claims, "[t]he test for laches or estoppel is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay."); Seaboard Fin. Co. v. Martin, 244 F.2d 329, 332 (5th Cir. 1957) (finding that while "the defense of laches, though affirmative, may now be raised by motion to dismiss," the issue "should be tried on the proofs rather than the pleadings."). The Court now considers whether the remaining claims are subject to dismissal on alternate grounds.

AO 72A
(Rev.8/82)

B.    Failure to State a Claim

Defendants also move to dismiss the remaining claims in the Amended

Complaint on grounds that Plaintiff's claims fail as a matter of law.

1.    *Unjust Enrichment (Count VII)*

As an initial matter, Count VII, which states a claim for unjust

enrichment, fails as a matter of law because plaintiff asserts unjust enrichment

as a separate tort claim and not as an alternative theory of recovery for any

failed contract.  Somerson v. McMahon, 956 F. Supp. 2d 1345, 1357 (N.D. Ga.

2012) (citing Wachovia Ins. Servs., Inc. v. Fallon, 682 S.E.2d 657, 665 (Ga.

App. 2009)).  "A claim for unjust enrichment is not a separate tort, but an

alternative theory of recovery if a contract claim fails."  Id.  (citing Tidikis v.

Network for Med. Comm'ns & Research LLC, 274 Ga. App. 807, 811 (2005)).

Plaintiff has failed to allege the existence of any contract and does not allege

any contract claims.  As such, Count VII is **DISMISSED**.

2.    *Lanham Act and Georgia Trademark Claims (Counts IV–VI)*

Plaintiff alleges violations of the Lanham Act and Georgia trademark law

in Counts IV-VI of the Amended Complaint.  The federal Lanham Act analysis

governs the analysis of Plaintiff's state law trademark claims under O.C.G.A. §

14

23-2-55 and § 10-1-451(b).  The Eleventh Circuit has held that a trademark infringement claim under Georgia law is reviewed under the same standards as a claim under the Lanham Act.  Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 902 n.4 (11th Cir. 2007).  The Eleventh Circuit has also upheld decisions of this Court ruling that the Georgia unfair competition statute involves the same dispositive question as the federal Lanham Act, i.e., whether use of a service mark is likely to cause confusion.  See Jellibeans, Inc. v. Skating Clubs of Ga., Inc., 716 F.2d 833, 839 (11th Cir. 1983); Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) (noting that the standards governing deceptive practices and unfair competition claims under Georgia law "are similar, if not identical, to those under the Lanham Act").  Accordingly, the state law causes of action rise and fall with Plaintiff's federal trademark claims.

Defendants move to dismiss Plaintiff's trademark and unfair competition claims on the basis that Plaintiff owns no trademark rights in "HONEY," and thus those claims must fail as a matter of law. (Defs.' Mem., Dkt. [8-1] at 18-19.)  The Court agrees that Plaintiff has failed to allege sufficient facts such to state a claim upon which relief may be granted.

15

Plaintiff asserts trademark rights in the mark "HONEY" in the state of Georgia and in the United States "in association with various goods and services related to the entertainment, specifically dance field." (Am. Compl., Dkt. [5] ¶ 53.) Plaintiff does not allege that she has registered the trademark "HONEY." As a result, to survive a motion to dismiss, Plaintiff must have alleged sufficient facts to show that she has established common-law trademark rights to the "HONEY" mark. The Court concludes that Plaintiff has not met that burden.

A trademark is "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. "To satisfy the first element of § 43(a)–proof of a valid trademark–a plaintiff need not have a registered mark." Tana, 611 F.3d at 773. On the contrary, use of a plaintiff's unregistered mark–i.e., common law trademark–can violate Section 43(a) if the unregistered mark is "so associated with [the plaintiff's] goods that the use of the same . . . mark[ ] by another company constitutes a false representation that its goods came from the same source." Id. (internal quotation marks and citation omitted). Only a sufficiently

16

distinctive common law mark, however, can give rise to a cause of action under the Lanham Act.  See id. ("[O]nly those marks that are capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks under the Lanham Act.").

The Eleventh Circuit recognizes four categories of distinctiveness, "listed in ascending order of strength: (1) generic–marks that suggest the basic nature of the product or service; (2) descriptive–marks that identify the characteristic or quality of a product or service; (3) suggestive–marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful–marks that bear no relationship to the product or service, and the strongest category of trademarks." Id. at 774.  Marks that fall into the last two categories are deemed "inherently distinctive" and generally are entitled to trademark protection.  Id. (citation omitted).  The first category of marks, generic marks, generally are not entitled to trademark protection.  Id. (citation omitted).  Descriptive marks are not "inherently distinctive," but they may

17

become sufficiently distinctive to enjoy trademark protection if they acquire "secondary meaning." Id. (citing 15 U.S.C. § 1052(f)).

In this case, Plaintiff claims to have protectable trademark rights in the mark "HONEY" based on her use of the stage name "Honey Rockwell." Names are descriptive marks, which, as stated above, are entitled to trademark protection only if they have acquired secondary meaning. Tana, 611 F.3d at 774. Furthermore, they are entitled to this protection only if secondary meaning existed prior to the time the alleged infringer first began using the mark. Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 800 (11th Cir. 2003). Plaintiff has alleged that she has used the stage name "Honey Rockwell" since 1994. The Court then must consider whether Plaintiff has alleged sufficient facts to conclude that Plaintiff's use of the stage name "Honey Rockwell" creates a secondary meaning to the mark "HONEY."

Plaintiff's Amended Complaint alleges that the goods and services in the dance industry were sold under the name "Honey Rockwell." (Am. Compl., Dkt. [5] ¶¶ 11, 13-14.) The Court assumes without deciding that Plaintiff has a cognizable claim to trademark rights in the mark "Honey Rockwell." However, rights in the composite name "Honey Rockwell" do not confer rights

18

in the single name "Honey."  <u>Lone Star Steakhouse & Saloon, Inc., v. Longhorn</u>

<u>Steaks, Inc.</u>, 106 F.3d 355, 362 (11th Cir. 2007).  Plaintiff has not alleged that

she sold goods and services under the single name "Honey."  Because she has

not *used* the mark "HONEY," Plaintiff cannot have achieved secondary

meaning in that mark.

Plaintiff has failed to state a claim under the Lanham Act or Georgia

trademark law upon which relief may be granted.  Accordingly, Counts IV, V,

and VI of the Amended Complaint are **DISMISSED**.

> 3.      *Georgia Uniform Deceptive Trade Practices Act Claim*
>         *(Count III)*

Plaintiff's allegations in Count III that Defendants violated Georgia's

Uniform Deceptive Trade Practices Act also rely on Defendants' "production,

promotion, distribution, offering for sale and sale by Defendants of goods or

services bearing the HONEY mark."  (Am. Compl., Dkt. [5] ¶ 39.)  As stated

above, Plaintiff has not alleged sufficient facts to show that she has any rights in

the "HONEY" mark.  However, construing the facts in favor of Plaintiff, as the

Court must on a motion to dismiss, the Court holds that Plaintiff's claims

enumerated in Count III are not subject to dismissal simply because she has

relied on the "HONEY" mark.  Rather, the Court will now consider whether

Plaintiff's claim for deceptive trade practices are sufficiently supported by the

allegations in the Amended Complaint such that they state a claim upon which

relief may be granted.

Here, Plaintiff has alleged that she has been performing and teaching hip

hop dance under the trade name "Honey Rockwell." "'Trade name' means a

word, name, symbol, device, or any combination of the foregoing in any form

or arrangement used by a person to identify his business, vocation, or

occupation and distinguish it from the business, vocation, or occupation of

others." O.C.G.A. § 10-1-371(8).  Georgia law creates a cause of action for

deceptive trade practices when a person "[c]auses likelihood of confusion or of

misunderstanding as to the source, sponsorship, [or] approval ... of goods or

services," or "as to affiliation, connection, or association with ... another," or

"[r]epresents that goods or services have sponsorship[ or] approval ... that they

do not have." O.C.G.A. § 10-1-372(a).  Plaintiff has alleged that she has been

approached as "the real honey."  Construing the facts in the Amended

Complaint in the light most favorable to Plaintiff, Count III cannot be dismissed

on grounds that it fails to state any plausible claim upon which relief may be

granted.  The Court now considers whether Count III is otherwise barred by the First Amendment.

      C.     First Amendment

      Defendant argues that the Amended Complaint is barred by the First Amendment because the *Honey* films are protected works of artistic expression. As an initial matter, the Court agrees that the *Honey* films are works protected by the First Amendment.  <u>Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.</u>, 683 F.3d 1266, 1276 (11th Cir. 2012);  <u>Thoroughbred Legends, LLC v. The Walt Disney Co.</u>, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *12 (N.D. Ga. Feb. 12, 2008).  Plaintiff argues, however, that any First Amendment protection enjoyed by the films is incomplete "because such films are, in fact, sold in the commercial marketplace for profit."  (Pl.'s Resp., Dkt. [13] at 12.) The Court finds this distinction unconvincing.  See <u>Thoroughbred Legends</u>, 2008 WL 616253, at *12 ("The use of Plaintiffs' likenesses in advertising the film is protected because the film itself is protected.").   The Court addresses the Constitutional defense only with respect to Count III as the other Counts have been previously dismissed.

AO 72A
(Rev.8/82)

While the Court found that Count III states a claim based on Plaintiff's use of the trade *name* "Honey Rockwell" versus the trade*mark* "HONEY," the analysis under the Georgia Uniform Deceptive Trade Practices Act tracks that of the Lanham Act regardless.  Univ. of Ga. Athletic Ass'n, 756 F.2d at 1539 n.11 (citing Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258-59 (5th Cir.) (test for deceptive trade practice and unfair competition under Georgia law same as test for false designation of origin under Lanham Act, namely, "whether defendants' use of the mark ... is likely to cause confusion, mistake, or deception")).

The Court must balance the First Amendment and Lanham Act using the analysis set forth in Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), which has been adopted by the Eleventh Circuit.  Univ. of Alabama Bd. of Trustees v. New Life Art, Inc., 683 F.3d 1266, 1277-78 (11th Cir. 2012).  The Rogers test requires courts to read the Lanham Act narrowly to avoid impinging on speech protected by the First Amendment:

> We believe that in general the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression. In the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic

22

relevance to the underlying work whatsoever, or if it has some artistic relevance, unless the title explicitly misleads as to the source of the work.

Id. at 1277 (quoting Rogers, 875 F.2d at 999).

The Court holds that Count III must be dismissed because it fails as a matter of law under this analysis.  The Court again notes that Plaintiff has alleged that she performed under the trade name "Honey Rockwell," but even undertaking the analysis using the trade name "Honey," the Court concludes that the Honey films are protected by the First Amendment.  The title *Honey* is artistically relevant to the protagonist Honey Daniels's first name.  Similarly, *Honey 2* is relevant in that the protagonist of that film drew inspiration from Honey Daniels.  The facts alleged in the Amended Complaint, construed in Plaintiff's favor, are not sufficient to allow the Court to conclude that the title could explicitly mislead as to the source of the work.  As such, Count III fails to state a claim upon which relief may be granted and is **DISMISSED**.

## III.    Defendants' Request for Oral Argument

Because the Court has dismissed all of Plaintiff's claims on the basis of the motions and briefs filed by the parties, Defendants' Request for Oral Argument [10] is **DENIED as moot.**

23

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss [8] is **GRANTED** with respect to all claims.  Defendant's Request for Oral Argument [10] is **DENIED as moot**.

**SO ORDERED**, this  18th  day of December, 2014.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

24